UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA             :
                                     :   **MOTION FOR**
                                     :   **RECONSIDERATION OF**
        v.                           :   **BAIL CONDITIONS SET**
                                     :
                                     :   S3 20 CR 57(GBD)
JERLAINE LITTLE                      :
              Defendant              :
-------------------------------------------------X

**MOTION DENIED**

*George B Daniels*

**Judge George B. Daniels**

MAR 2 4 2020

## DEFENDANT'S MOTION FOR RECONSIDERATION OF PRETRIAL BAIL FOR DEFENDANT JERLAINE LITTLE

The Defendant, through her counsel, respectfully moves this Court, to reconsider it's previous detention set and grant defendant, Jerlaine Little reasonable pre-trial bail conditions.[1] As grounds for this Motion the defendant relies on the following facts and authorities.

### Introduction

Defendant moves the Court for a bail hearing and an order granting her release.[2] Jerlaine Little who is a pretrial defendant currently detained at the MCC New York, is within the group of people the Centers for Disease Control and Prevention ("CDC") has categorized as most-at-risk for contracting COVID-19, a dangerous illness spreading rapidly across the world, through New York State, and within New York City. The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the

---

[1] Due to the emergency nature of this request, the undersigned is available as soon as possible to resolve these issues. Moreover, we would request a "telephone conference" and consent to waiving Ms. Little's production to resolve the sole issue of whether Ms. Little's present (and possible future) medical conditions, which are not in dispute, warrant modification of her bail.

[2] The undersigned would request that the Court rely on the previous bail arguments made by the undersigned at the initial bail application as well as the arguments made in this written submission.

extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The health risk to Jerlane Little, because of her ***medical condiction*[3]** given the conditions at the MCC, as described in detail below, necessitates her temporary release on bail until this pandemic has ended.

### Factual Background

### *Changed Circumstances: COVID-19 Outbreak*

As of March 12, 2020, the new strain of coronavirus which causes COVID-19, has infected over 132,300 people, leading to at least 4,954 deaths worldwide.[4] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[5] Governor Cuomo declared a State of Emergency on March 7, 2020.[6] Mayor DiBlasio declared a State of Emergency in New York City on March 12. 2020, and banned gatherings of over 500 people.[7] As of March 12, 2020, there are 325 positive cases in New York State[8]; there are 95 positive cases in New York City.[9]

The CDC has issued guidance that individuals at higher risk of contracting

---

[3] Due to privacy concerns, the undersigned would rather not indicate on this publicly filed document the nature of Ms. Little's medical issues but will provide that information to the Court during the hearing if a hearing is granted.

[4] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 12, 2020), *at* https://nyti.ms/2U4kmud (updating regularly).

[5] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.

[6] *At Novel Coronavirus Briefing, Governmor Cuomo Declares State of Emergency to Contain Spread of Virus*, New York State (March 11, 2020) *at* https://on.ny.gov/2TKzIoz.

[7] *DeBlasio Declares State of Emergency in NYC, and Large Gatherings Are Banned*, New York Times (March 12, 2020)

[8] *Novel Coronavirus (COVID-19)*, New York State Department of Health (March 12, 2020) *at* https://on.ny.gov/2vfFQvy (updating regularly).

[9] *Coronavirus*, New York City Health (March 12, 2020) *at* https://on.nyc.gov/39ME7wU (updating regularly).

2

COVID-19—adults over 60 years old and people with chronic medical conditions such as lung disease, heart disease, and diabetes—take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[10] With confirmed cases in New York City that indicate community spread, we must take every necessary action to protect vulnerable populations and the community at large.

### *Conditions of Confinement and Spread of Coronavirus*

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[11] Inmates cycle in and out of BOP pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in federal pretrial detention centers.[12] Many people who are incarcerated also have chronic conditions, like *diabetes* or HIV, which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[13] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic

---

[10] *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) *at* https://bit.ly/2vgUt1P.

[11] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

[12] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[13] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

in 2009, many jails and prisons dealt with high numbers of cases.[14] In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[15] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[16] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[17] Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners.[18]

### *Specific Conditions at the MCC*

MDC Brooklyn and MCC New York have proven—recently and repeatedly—that they are unable to protect the health and safety of defendants in their custody. The MCC and MDC are massive pretrial detention facilities: the MCC houses approximately 700 people and the MDC houses approximately 1,600 people. The majority of the people detained are housed in small two-person cells with a shared toilet and sink, and eat meals and have recreation in groups of 70 or more. Other units are open dormitories that house

---

[14] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

[15] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

[16] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.

[17] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.

[18] *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) at https://theappeal.com

70 or more inmates without the ability to separate. The medical care at both facilities has repeatedly failed to adequately address even routine medical conditions such as diabetes, pregnancy, and anemia.[19] In times of crisis, the medical care has halted entirely.

For an entire week in January and February 2019, during the sub-zero temperatures of the "Polar Vortex," MDC Brooklyn went without power and heat, and inmates were locked down for days at a time.[20] Inmates were denied hot food or additional blankets or warm clothing, despite the frigid air inside the facility. Inmates with serious pre-existing physical and mental illnesses received no care.[21] Even the most basic efforts, such as moving inmates requiring sleep apnea machines to breathe to the available floors with electricity, were not taken.[22]

In granting downward sentencing variances in a series of cases after the blackout, Judge Chen noted that inmates at the MDC were "subjected to very cruel conditions," and that "there was a reluctance of the part of the officials [at MDC Brooklyn] to correct the conditions or even to disclose them timely."[23] Judge Furman reached the same conclusion: "It's pretty clear to me . . . that steps could have been taken, and taken more quickly, to address the problems [at the MDC]. And the bottom line is, the conditions

---

[19] *E.g., National Association of Women Judges (NAWJ) Women in Prison Committee (WIP) Second Visit to BOP's Metropolitan Detention Center (MDC), Brooklyn, New York, June 3, 2016, at* https://bit.ly/39JRhdW.

[20] *See* Annie Correal, *No Heat for Days at a Jail in Brooklyn Where Hundreds of Inmates Are Sick and "Frantic,"* N.Y. Times (Feb. 1, 2019), *at* https://nyti.ms/2sXCIQg; Complaint, *Scott v. Quay*, 19-CV-1075 (MKB) (E.D.N.Y. Feb. 22, 2019), ECF No. 1.

[21] Complaint, *Scott v. Quay*, 19-CV-1075 (MKB) (E.D.N.Y. Feb. 22, 2019), ECF No. 1.

[22] *Review and Inspection of Metropolitan Detention Center Brooklyn Facilities Issues and Related Impacts on Inmates*, Office of the Inspector General, U.S. Department of Justice at 29 (September 2019) *at* https://oig.justice.gov/reports/2019/e1904.pdf.

[23] Tr. of Sent. Hr'g. at 12, *United States v. Acosta De La Rosa*, 18-CR-667 (PKC) (E.D.N.Y. Jun. 4, 2019) (ECF No. 16). *See United States v. Bruney*, 18-CR-542 (PKC) (E.D.N.Y. 2019); *United States v. Douglas*, 18-CR-554 (PKC) (E.D.N.Y. 2019).

that I read about are the conditions that one associates with a third world country and not a country like this, and nobody in detention . . . should have to endure that as the detainees did at the MDC."[24]

Recently, MCC New York demonstrated a similar inability to appropriately care for defendants. Based on conversations with inmates, for more than ten (10) days, every inmate endured a full lockdown, without access to family members or attorneys, while law enforcement searched for a loaded gun brought into the facility by a correctional officer.[25] Moreover, it was brought to my attention that during this "lockdown" at MCC, inmates were only provided two (2) showers, minimum food and that mice and water bugs ran through the units as guards unblocked holes in walls and vents that inmates had stuffed with clothing to prevent pests. Notably, inmates on one unit were forced to share one toilet among twenty-six people, and prevented from washing their clothing: prime conditions for the spread, rather than containment, of infectious disease. On other units, toilets overflowed in two-man cells, spreading raw sewage. Inmates with serious medical conditions, including AIDS and anemia, were denied medications or medical care. Female inmates were denied feminine hygiene supplies. No clean drinking water was provided; inmates were forced to drink from their bathroom sinks, from which brown water often ran. ***Specifically regarding Ms. Little, she was denied the adequate treatment of her medical condition during this lockdown causing her to feel extremely ill on numerous occasions in the last three (3) weeks.***

---

[24] Tr. of Sent. Hr'g at 31, *United States v. Ozols*, No. 16-CR-692 (JMF) (S.D.N.Y. Feb. 12, 2019) (ECF No. 31).

[25] *See* Stephen Rex Brown, *Strip Searches, Frozen Bologna Sandwiches and Wrecked Cells: MCC Inmates Detail Lockdown Due to Smuggled Gun*, N.Y. Daily News, Mar. 6, 2020, *at* https://bit.ly/2xqbgjw.

6

To date, the MCC has not met even the most basic recommendations of the CDC for preventing the spread of the coronavirus. Because of this, counsel has begun to encounter difficulties finding interpreters and experts willing to enter these facilities, and the many lawyers who are at high risk because of age or underlying medical condition have also been advised not to enter. Both facilities are still waiting for guidance from the BOP on screening and treatment. In the meantime, neither facility has a screening mechanism in place for staff or visitors, other than self-reporting. The MCC lacks even a basic sign advising people who have traveled to the highest-risk countries not to enter. Staff are not wearing face masks or gloves. Neither facility has hand sanitizer available.[26] The MCC has no soap, hot water, or paper towels in the visitors' bathroom. Both facilities plan to provide bar soap to inmates, but as of now, not every inmate has access to soap. Only those inmates who have money for commissary will be able to purchase antibacterial soap. Neither facility has any testing for COVID-19 available, and does not know when, if ever, it will have tests. There is no medical ward or facility in place at either institution. At MDC, the only stated plan, should an inmate become symptomatic for COVID-19, is to confine that inmate to the SHU, where the cells are cold, rife with black mold, and the ceiling leaks directly onto the beds.

As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into the MCC and MDC, and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions. On March

---

[26] On March 12, 2020, the Warden of the MCC advised that they are seeking to order hand sanitizer, and that the BOP has relaxed its strictures on hand sanitizer during this period. The Warden had no information as to when hand sanitizer might arrive at the facility.

7

12, 2020, Magistrate Judge Orenstein decided that detaining a pre-trial defendant who was using drugs while on supervision would present too great a risk to the staff and inmates at MDC Brooklyn, ruling that part of the "danger to the community" calculus had to include the risk of a new inmate bringing the virus into the facility. *United States v. Raihan*, 20 Cr. 68 (BMC) (Mar. 12, 2020).

The MDC and MCC have only the most minimal provisions for remote access should a quarantine be necessary: The MCC has one video-conference setup available for all 700 inmates that has not yet been tested to see if it connects with the courthouse or Probation. The MDC has two video-conference setups, one in SHU, and one in general population, for all 1600 inmates.

## The Bail Reform Act Requires Jerlaine Little's Release

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The circumstances that existed when Jerlaine Little was ordered detained have now changed. There is a pandemic that poses a direct risk to Jerlaine Little ***due to her present (and future) medical conditions*** that is far greater if she continues to be detained during this public health crisis.[27]

As an initial matter, the Bail Reform Act requires that a court should "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending

---

[27] We emphasize may because as of the drafting of this letter, although Ms. Little has requested to be tested, MCC refuses to give her requested tests which if proven positive would make her an even higher risk person related to infectious diseases.

8

trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225 at 7, as reprinted in 1984 U.S.C.CA.N. 3182, 3189); *see United States v. Salerno*, 481 U.S. 739, 755 (1987) (suggesting that "detention prior to trial or without trial is the carefully limited exception" to liberty before trial). One charged with a crime is, after all, presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. *United States v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. *See United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), *cert. dismissed sub nom.*, *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As Judge Weinstein held, "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC"). *See also United States v. Adams*, No. 6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10, 2019) (defendant charged with violation of the Mann Act and possession of child

pornography and suffering from diabetes, heart conditions and open sores released on home detention because of his medical conditions); *United States v. Johnston*, No. 17-00046 (RMM) 2017 WL 4277140 (D.D.C. Sept. 27, 2017) (defendant charged with violation of the Mann Act and in need of colon surgery released to custody of his wife for 21 days); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (badly wounded defendant released to custody of his relatives).

This Court should consider the "total harm and benefits to prisoner and society" that continued pretrial imprisonment of Jerlaine Little will yield, relative to the heightened health risks posed to Jerlaine Little during this rapidly encroaching pandemic. *See United States v. D.W.*, 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016); *Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case"); *United States v. Francis*, 129 F. Supp. 2d 612, 619-20 (S.D.N.Y. 2001) (reducing sentence in acknowledgment of "the qualitatively different, substandard conditions to which the Defendant was subjected" in pretrial detention).

### Conditions of Release Are Available That Allow Jerlaine Little To Be Treated Humanely While Also Ameliorating Any Danger To The Community

From Jerlaine Little's perspective her life—not only her liberty—is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case. While we

acknowledge the seriousness of the charges, the presumption of detention and the significant prison exposure should Ms. Little be convicted of all the charges in this matter. We also note, however, Ms. Little's lack of criminal record, her expulsion from the alleged enterprise in this matter, the antagonistic positions between her and the alleged enterprise in this matter, the significant duration of lack of association with members of the alleged enterprise, the illness of her two children and that Pre-Trial services initially indicated that there are a set of conditions that should assure the Court that Ms. Little would return to court on every court date.

Critically, during this temporary release, Jerlaine Little will not be left to her own devices, but will be supported and monitored by Pretrial Services. Since 2009, Pretrial Services' data has found that only 2.9% of defendants in the highest risk category were re-arrested for a violent crime while on release.[28] In the Eastern District of New York, Chief U.S. Pretrial Services Officer Roberto Cordeiro reports that in Fiscal Year 2019, only six of 1,300 defendants (0.5%) under Pretrial Services' supervision failed to appear in court; only 2.8% were rearrested. The elderly and chronically ill, no matter what crime they are accused of, pose a lower risk of violating supervision, particularly during a global pandemic during which even leaving the house will endanger their lives.

Thus, we are proposing that Ms. Little be temporarily released pursuant to the following: $200,000.00 bond co-signed by three (3) financially secure people, strict Pretrial monitoring, surrender of all travel documents, hospital/medical and attorney visits as needed, home incarceration and 24 hour GPS location monitoring.

---

[28] Thomas H. Cohen, Christopher T. Lowenkamp, and William E. Hicks, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary* (September 2018) *at* https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf.

## Conclusion

Jerlaine Little is among the vulnerable population at heightened risk of getting very sick from this illness. For all of the above reasons, Jerlaine Little should be granted release on bond.

Respectfully submitted,

*Xavier R. Donaldson*

Xavier R. Donaldson
212-722-4966

cc: AUSA Michael Longyear
via email