**Donaldson & Chilliest, LLP**
**1825 Park Avenue, Suite 1102**
**New York, NY 10035**
212-722-4900
212-722-4966(f)



MOTION DENIED
George B. Daniels

JUN 0 3 2020

May 29, 2020

**BY ECF**
The Honorable George B. Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Jerlaine Little*,
            S3 20 Cr. 57 (GBD)

Dear Judge Daniels:

    As this Court is aware, I represent Ms. Little in the above referenced matter. Ms. Little is an inmate at MCC and has been categorized by that facility as a "high risk" COVID-19 inmate by MCC because she has diabetes and takes several diabetes related medications on a daily basis. As such, please accept this letter (and Affidavit of Dr. Venters) as a request for the Court to reconsider it's denial of Ms. Little's initial "temporary release" motion.

    Recently, a facility evaluation of MCC was conducted by Dr. Homer D. Venters. Dr. Venters is a physician, internist and epidemiologist "with over a decade in providing, improving and leading health services for incarcerated people." *See, Dr. Venter Affidavit*, p. 2. Dr. Venter was the Deputy Medical Director for the Correctional Health Services of New York City and Direct of Programs for Physicians for Human Rights. Dr. Venters has also conducted over 50 facility inspections three of which related to COVID-19.

    When evaluating MCC, Dr. Venters found amongst other things, the following:

- The tier he observed had approximately 26 bunk beds, spaced four to six feet apart and some small tables in the center. The tier had a single toilet and sink (*para 17*);

- In certain places I visited during the inspection, I observed signs of severe pest infection, such as roaches caught in traps (para 17);

- MCC is widely infested with mice and roaches. Almost all of the housing areas and other common spaces I toured had evidence of numerous living and dead roaches and mice. Particularly concerning is the presence of these vermin in cells utilized for medical isolation of COVID-19 patients (para 20);

- Computer workstations and phones in common areas for inmate use. In almost every case, no cleaning fluid or applicator was visible near these common spaces (para 19);

- The MCC has failed to adequately detect COVID-19 cases in the facility, and its existing practices for detecting such illness remain deeply inadequate and in many cases non- compliant with CDC guidelines (para 21);

- Very little screening is in fact occurring in the MCC, and that this screening relies almost exclusively on temperature checks (para 24);

- A review of a sample of records that the MCC provided documenting the results of inmate temperature checks, other than brief and sporadic notes, this document provides no evidence that inmates are

2

asked any standard set of questions regarding symptoms of COVID-19 (para 25);

- The failure to consistently screen individuals for symptoms is a material failing. The CDC makes clear that COVID-19 can present with many signs or symptoms and that screening and surveillance should be focused on asking about symptoms as well as detecting elevated temperature. It is essential that such active screening be part of any response to a viral outbreak. Failure to do so can result in catastrophic consequences to populations exposed to a communicable virus, such as COVID-19. (para 26);

- This lack of screening has translated into inmates contracting COVID-19 and never receiving testing or care. (para 29);

- The failure to detect and respond to COVID-19 at the MCC is also linked to the failure to undertake the critical step of contact tracing once a staff member or inmate is identified as possibly having COVID-19. (para 30);

- It is also apparent that staff members exposed to COVID-19 positive staff or inmates are expected to continue working, at least in some cases when symptomatic or positive for COVID-19, thus amplifying the risk of the infection spreading. (para 33);

- Based on my physical inspection of the MCC, it is my assessment that several current practices in MCC actually promote a more rapid

spread of COVID-19 inside the facility and serve to work against some of the infection control measures already in place (para 56);

- Several current practices in MCC actually promote a more rapid spread of COVID-19 inside the facility and serve to work against some of the infection control measures already in place (para. 57);

- The CDC has identified basic guidelines for infection control and overall COVID- 19 response in detention settings, many of which the MCC appears to have ignored (para. 58);

- A lack of basic infection control extended to failing to initiate any additional cleaning when a person was identified with COVID-19 and transferred to medical isolation or the hospital (para. 61); and

- The MCC also appears to have given little effort to implementing any social distancing (para 62).

We respectfully ask the Court to take into consideration the attached affidavit of Dr. Vetners and reconsider the Court's denial of Ms. Little's initial "temporary release" motion.

Respectfully submitted,

*Xavier R. Donaldson*

Xavier R. Donaldson
Counsel for Jerlaine Little
212-722-4900

cc:   AUSA

4